## NOLAN v. FARMINGTON SHOE–MFG. CO.

District Court, D. Massachusetts. April 6, 1928.

No. 2886.

1. Master and servant ⊕⇒15—Agreement required of employees not to aid in changing open shop policy of employer held not to violate rights of labor union.

That an employer required its employees, as a condition to employment, to sign an agreement acknowledging that it conducted its business on an open shop basis, and agreeing that they would do nothing to change that status of their coemployees, nor aid in changing the open shop policy, *held*, not to give a right of action to a labor union of which some of the employees were members; there being no requirement that they should not continue their membership, and it not appearing that the employer knew that their contracts with the union prohibited the signing of such agreements.

2. Master and servant ⊕⇒15—Labor union cannot, by contracts with members, abridge employer's right to conduct an open shop.

A labor union cannot, by constitutional provisions or contracts with its members, abridge the right of an employer to conduct an open shop.

In Equity. Suit by John D. Nolan against the Farmington Shoe-Manufacturing Company. Decree for defendant.

Frederick W. Mansfield, of Boston, Mass., for plaintiff.

Ropes, Gray, Boyden & Perkins, of Boston, Mass., and Joseph B. Ely, of Springfield, Mass., for defendant.

BREWSTER, District Judge. This is a bill of complaint, brought by the plaintiff, on behalf of the Shoe Workers' Protective Union, a labor union of persons engaged in the various branches of the trade in the making of boots and shoes.

The fourth paragraph of the bill of complaint contains the following allegations:

"4. The plaintiff humbly complains and says that each member of the aforesaid Shoe Workers' Protective Union has, by contract with every member thereof and with the Shoe Workers' Protective Union, assumed certain obligations, among which is a contract that no member of said association will sign or enter into individual contracts of employment with any person, firm, association, or corporation, or any contract which provides that he will not become or remain a member of the Shoe Workers' Protective Union or any local union thereof."

As to this paragraph of plaintiff's bill of complaint, I find that a member of the union in his application promises to obey and abide by the constitution of the union.

The constitution (article I, section 3) provides in substance that the approval of the application for membership constitutes a contract between the applicant and the union, and between him and every member of the union, "whereby, in consideration of the benefits and advantages secured to him by reason of his membership therein, he agrees (1) that he will remain a member of the Shoe Workers' Protective Union until he is expelled; (2) that he will not violate any of the provisions of this constitution; * * * (3) that he will not enter into or sign any individual contract of employment with any person, firm, association, or corporation, or any contract or agreement, which provides that he will not become or remain a member of the Shoe Workers' Protective Union or any local union thereof."

For the purposes of this case, I am prepared to assume, without deciding, that a member of the union has undertaken certain valid contractual obligations by virtue of his application and the approval thereof by the union.

[1] In the fifth paragraph the plaintiff alleged in substance that the defendant employed a large number of members of the union with knowledge that they were members, and with knowledge of the obligation which the members had assumed with the union; that on November 8, 1927, the defendant was formally notified of the existence of the contract, but had disregarded the same, and that it had endeavored, and was endeavoring, to induce the members to violate the contract by entering into individual contract, one of the provisions of which was that the person signing the contract would not become, or remain, a member of any labor or trade union, and in order to induce members to violate the contract the defendant had threatened to discharge any who refused to sign the individual agreement with the defendant, and that, as a result of this malicious interference, many members of the union had been induced to violate the contract; that the defendant purposes to continue with the malicious interference.

The plaintiff has failed to establish by his evidence the allegations of this paragraph. I entertain some doubts whether, if the allegations had been proved, there would have been a sufficient showing of irreparable injury to entitle the plaintiff to relief in equity, but the evidence falls so far short of the allegations that it becomes unnecessary to decide this question. It also becomes unnecessary to consider the defense, raised by the defendant, involving the validity of the contract

between the union and its members, if that defense were open to it.

The facts established by the evidence are that members of the union were employed by the defendant corporation in its shoe factory at Dover, N. H. Prior to the 8th day of November, 1927, the defendant called its employees together and asked them to sign a contract, which read as follows:

"In consideration of my employment by the Farmington Shoe-Manufacturing Company, with full knowledge that it operates as an open shop, I voluntarily agree that I shall do nothing directly or indirectly to change that status of the operation of the company; that I will do nothing to change the status of my fellow workmen, nor will I aid or assist in any manner any person to make said Farmington Shoe-Manufacturing Company or its employees conduct work under other than an open shop basis."

It was intimated at the time that any employee refusing to sign would be asked to terminate his employment, and two of the employees who refused to sign were discharged. Two of the employees at first refused to sign, stating that they were members of the union. They were given time to think the matter over, and on the following day, but before the defendant had received the notice, hereafter referred to, indicated an intention to sign and later did sign.

On November 8, 1927, the general counsel for the union sent a written notice to the defendant, notifying it that a number of its employees were members of the union, and that their membership obligated them not to enter into or sign any individual contract of employment with any person, firm, association, or corporation. This notice was not received until about noon of the following day. It might be noted in passing that the notice did not contain an accurate statement of the contract between the employees and the union, set out in plaintiff's bill of complaint. The article of the constitution, already quoted, provides that a member shall not enter into any individual contract that he will not become or remain a member of the union. The language of the contract which was omitted in the notice is of vital importance. It will appear from the contract, which the defendant required of its employee, that the individual contract which it was exacting was not a contract which provided that the employee should not be a member of the union. No employee was discharged because of his membership in the union. To at least two of the employees the representative of the defendant expressly

disclaimed any intention of interfering with the employees' membership in the union. He stated in substance that, if the employee signed the agreement, the defendant had no objection to his retaining his union membership.

The defendant did not require its employees, as a condition of employment, to sever their connection with the union. All the defendant sought in the individual contract was the right to continue as an open shop, and this demand was not necessarily incompatible with membership in a trade union.

The evidence fails to disclose that the defendant was aware of the provisions of the constitution of the union, upon which the alleged contract is based, until receipt of the notice, nor does it disclose that, subsequent to the receipt of the notice, the defendant did anything tending to induce its employees to violate or disregard their obligations to the union.

The plaintiff has altogether failed to bring this case within the doctrine of Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461. There is nothing in the case to warrant the inference that the defendant entered into any unlawful conspiracy to work injury to the union. Its rights to conduct an open shop, and to employ labor only upon the condition that the employee will do nothing to interfere with that right, must be deemed beyond controversy, in view of Hitchman Coal & Coke Co. v. Mitchell, supra, and numerous other decisions in both the state and federal courts.

[2] The Shoe Workers' Protective Union cannot, by incorporating inconsistent provisions into its constitution, or by contract with its members, curtail or abridge this right of the employer. It is only when an employer enters into an unlawful conspiracy for the purpose of working injury to the union, and adopts unlawful means to that end, that the doctrine of Hitchman Coal & Coke Co. v. Mitchell, supra, can be invoked. There is no evidence before me to warrant the finding that the defendant purposely and maliciously entered upon its line of conduct, in order to prevent the performance of any valid contract that may have existed between the union and its members who were in the employ of the defendant. Whatever it did to induce its employees to sign the agreement with it was done before it was aware of the provisions contained in the by-laws and constitution of the union. Obviously the defendant was actuated by a desire to pro-

mote harmony and stability in its own manufactory, by reducing the possibilities of labor disturbances, and whatever was done to that end was done in furtherance of a lawful purpose, and not designed or intended to work injury to others. There has been no invasion of the rights of the plaintiff's organization which would justify a court of equity in granting relief.

Bill may be dismissed.